IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

REPUBLICAN NATIONAL COMMITTEE; REPUBLICAN PARTY OF ARIZONA,
LLC; AND YAVAPAI COUNTY REPUBLICAN PARTY,

*Plaintiffs/Appellants,*

*v.*

ADRIAN FONTES, IN HIS OFFICIAL CAPACITY AS ARIZONA SECRETARY OF
STATE,
*Defendant/Appellee,*

VOTO LATINO, ARIZONA ALLIANCE FOR RETIRED AMERICANS,
DEMOCRATIC NATIONAL COMMITTEE, AND ARIZONA DEMOCRATIC PARTY,
*Intervenor-Defendants/Appellees.*

No. CV-25-0089-PR
Filed July 17, 2026

Appeal from the Superior Court in Maricopa County
The Honorable Frank W. Moskowitz, Judge
No. CV2024-050553
**AFFIRMED IN PART**

Opinion of the Court of Appeals, Division Two
259 Ariz. 393 (App. 2025)
**VACATED AND REMANDED**

COUNSEL:

Christopher O. Murray (argued), Julian R. Ellis, Jr., First & Fourteenth
PLLC, Colorado Springs, CO; and Kurt M. Altman, Kurt M. Altman PLC,
Phoenix, Attorneys for Republican National Committee, Republican Party
of Arizona, LLC, and Yavapai County Republican Party

Kristin K. Mayes, Arizona Attorney General, Joshua D. Bendor (argued), Solicitor General, Joshua M. Whitaker, Kara Karlson, Karen J. Hartman-Tellez, Kyle R. Cummings, Assistants Attorney General, Phoenix, Attorneys for Arizona Secretary of State Adrian P. Fontes

Laura Winsky Conover, Pima County Attorney, Daniel S. Jurkowitz, Deputy County Attorney, Tucson, Attorneys for Amici Curiae Pima County and Pima County Recorder Gabriella Cázares-Kelly

Andrew W. Gould, Alexandria Saquella, Holtzman Vogel Baran Torchinsky & Josefiak, PLLC, Phoenix; and Elizabeth Price Foley, Holtzman Vogel Baran Torchinsky & Josefiak, PLLC, Tallahassee, FL, Attorneys for Amicus Curiae The Honest Elections Project

Kory A. Langhofer, Thomas J. Basile, Statecraft PLLC, Phoenix, Attorneys for Amici Curiae Arizona State Senate President Warren Petersen and Speaker of the Arizona House of Representatives Steve Montenegro

Mary R. O'Grady, Joseph N. Roth, Joshua J. Messer, Osborn Maledon, P.A., Phoenix, Attorneys for Amicus Curiae Hon. Kenneth Bennett, former Arizona Secretary of State

Brad Miller, Pinal County Attorney, Ian Daranyi, Deputy County Attorney, Florence; and Joseph A. Kanefield, Brett William Johnson, Ian R. Joyce, Snell & Wilmer LLP, Phoenix, Attorneys for Amici Curiae Pinal County Board of Supervisors and Pinal County Recorder Dana Lewis

Brunn (Beau) W. Roysden, III, Katlyn J. Divis, Fusion Law, PLLC, Phoenix, Attorneys for Amicus Curiae Center for Election Confidence, Inc.

James K. Rogers, Senior Counsel, America First Legal Foundation, Washington, D.C., Attorneys for Amicus Curiae America First Legal Foundation

JUSTICE MONTGOMERY authored the Opinion of the Court, in which CHIEF JUSTICE TIMMER, VICE CHIEF JUSTICE LOPEZ and JUSTICES BOLICK, BEENE, KING, and CRUZ joined.

JUSTICE MONTGOMERY, Opinion of the Court:

¶1        This case concerns whether the Secretary of State ("Secretary") must follow the procedures under the Administrative Procedure Act ("APA"), A.R.S. §§ 41-1001 to -1093.08, in publishing the Election Procedures Manual ("EPM") as mandated by the Legislature under A.R.S. § 16-452.   By decision order, we held that the EPM is not subject to the APA.   This Opinion sets forth our reasoning.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2        Every odd-numbered year, after consultation with each county, the Secretary must prescribe rules in an "official instructions and procedures manual" to achieve "the maximum degree of correctness, impartiality, uniformity and efficiency" in election procedures. § 16-452(A)–(B).   The Secretary must submit the EPM to the Governor and Attorney General for approval by October 1.    § 16-452(B).   Upon approval, the EPM must be issued by December 31 of that year.   *Id.*   After being issued, the EPM carries the force of law and violations of the rules are punishable as a class 2 misdemeanor.    § 16-452(C); *Ariz. Pub. Integrity All. v. Fontes*, 250 Ariz. 58, 63 ¶ 16 (2020).

¶3        The APA sets forth a comprehensive scheme for developing and publishing agency rules, including a public notice-and-comment period.    § 41-1001 *et seq*.   Section 41-1002(A) mandates compliance with its procedures for rules published by any agency unless expressly exempted.   The APA also explains that rules that do not comply with it are invalid, "unless otherwise provided by law."    § 41-1030(A).

¶4        On July 31, 2023, the Secretary published the 2023 draft EPM and permitted public comment for fifteen days.   On August 15, 2023, the Republican National Committee ("RNC") submitted a comment criticizing several components of the draft EPM.   The RNC asserted that the fifteen-day comment period was too abbreviated for it to adequately review the manual, evaluate any changes, and comment on those changes.   On September 30, the Secretary submitted a revised draft to the Governor and

Attorney General for review. The Secretary posted an acknowledgement that he had solicited public comment but clarified that doing so was purely voluntary, "[i]n keeping with the good practice of the prior Administration," and that suggestions had been incorporated where appropriate. The Governor and Attorney General approved the revised EPM and the Secretary issued it on December 30.

¶5 Shortly after the EPM was published, the RNC filed a special action complaint in the superior court, seeking declaratory and injunctive relief. The RNC argued that the Secretary had failed to comply with APA rulemaking requirements applicable to the 2023 EPM. For relief, the RNC sought to invalidate the 2023 EPM and enjoin the Secretary from using it until he complied with the APA. In the alternative, the RNC alleged that eight provisions of the EPM conflicted with state or federal laws. Accordingly, the RNC requested that the court declare the allegedly conflicting EPM provisions were without the force of law and void.

¶6 After filing its complaint, the RNC moved for a preliminary injunction to prevent the Secretary from using the 2023 EPM for the 2024 election. The Secretary opposed the motion and moved to dismiss the complaint for failure to state a claim upon which relief could be granted.[1] The superior court denied the RNC's request for a preliminary injunction and granted the Secretary's motion to dismiss on May 10, 2024.

¶7 The superior court determined that the APA did not apply to the 2023 EPM. Given the "unless otherwise provided by law" provision of § 41-1030(A), the court concluded that the Legislature had, in § 16-452, "otherwise provided by law" an independent procedure for issuing the EPM. Additionally, the court found that the challenged EPM provisions did not conflict with state law, and that the federal law conflict was moot.

¶8 The RNC appealed and the court of appeals reversed. *Republican Nat'l Comm. v. Fontes*, 259 Ariz. 393, 396 ¶ 2 (App. 2025). The court initially stated that there was no dispute that the EPM met the APA's statutory definition of rules and that the Secretary and his department are agencies subject to the APA. *Id.* at 400 ¶ 19. The court next observed that a plain reading of § 41-1002 provides that APA rulemaking procedures

---

[1] The Secretary also moved to dismiss the complaint based on the RNC's alleged lack of standing. That issue is not before us.

apply to all subject agencies absent an express exemption.  *Id.* ¶ 21.  The court then noted two ways the Legislature has expressly exempted agencies from APA procedural requirements.  *Id.*

¶9        First, as provided under § 41-1005—captioned "Exemptions"—the APA expressly exempts some agencies and rules from its requirements.  *Id.*  Second, implementing statutes for other agencies or rulemaking procedures may provide for an APA exemption.  *Id.*  However, the court of appeals found that neither the APA nor § 16-452 expressly exempted the EPM from the APA-rulemaking process.  *Id.* at 400–01 ¶ 22.

¶10        The court of appeals agreed with the RNC's characterization of § 41-1030(A) as purely remedial and that it "merely sets out conditions or requirements for a valid rule."  *Id.* at 401 ¶ 22.  The court also agreed with the RNC's contention that the superior court's reading of § 41-1030(A) permits "an implied exemption not anywhere expressed."  *Id.*  Therefore, reading § 41-1002(A) and § 41-1030(A) together, the court held that § 41-1030(A) "reiterat[ed]" § 41-1002(A)'s requirement that an exemption must be express.  *Id.* ¶ 23.

¶11        Harmonizing § 41-1002(A), § 41-1030(A), and § 16-452, the court of appeals interpreted "unless otherwise provided by law" as reiterating the express exemption requirement of § 41-1002.  *Id.*  Thus, absent an express exemption, "or otherwise provided with some alternative to the APA's procedure that expressly states that it is such an alternative, then that rule is invalid unless it was made in substantial compliance with the APA."  *Id.*

¶12        Next, the court of appeals considered whether the APA and EPM procedures conflicted.  *Id.* ¶ 24.  Acknowledging that there may be potential impracticalities in adhering to both the APA and EPM, the court stated that "impracticalities do not equate to conflicts."  *Id.* at 401–02 ¶ 25.  The court further observed that the Secretary may have to promulgate the EPM earlier due to the APA, "but they are not inconsistent, do not directly conflict, and do not create impossible barriers to complying with both."  *Id.* at 402 ¶ 25.  The court, therefore, concluded that the EPM was subject to the APA.  *Id.*

¶13 Finally, the court considered whether the Secretary substantially complied with APA rulemaking requirements. *Id.* at 402 ¶ 26. In particular, the court considered whether, by providing two weeks for comment on the proposed EPM, the Secretary fulfilled the purpose of the APA's comment period. *Id.* ¶ 27. According to the court, the fifteen-day period the Secretary allowed was shorter than the thirty-day notice-and-comment period mandated under the APA and, thus, failed to ensure "that those affected by a rule have adequate notice of the agency's proposed procedures and opportunity for input into the consideration of those procedures." *Id.* (quoting *Carondelet Health Servs., Inc. v. Arizona Health Care Cost Containment Sys. Admin.*, 182 Ariz. 221, 226 (App. 1994)). Consequently, the Secretary needed to comply with the APA's notice and rulemaking procedures. *Id.* ¶ 28.

¶14 The Secretary petitioned this Court for review, and, in a decision order filed October 16, 2025, we vacated the court of appeals' opinion and reinstated pages 1–3 of the trial court's May 10, 2024 decision, concluding that the APA does not apply to the EPM. We also stated that an opinion would follow. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## DISCUSSION

¶15 We review orders granting a motion to dismiss for failure to state a claim de novo. *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 10 ¶ 8 (2022). Dismissal is appropriate only if the plaintiff would not be entitled to relief under any plausible interpretation of the facts susceptible to proof. *State ex rel. Brnovich v. Ariz. Bd. of Regents*, 250 Ariz. 127, 130 ¶ 7 (2020). In assessing a motion to dismiss, we assume the truth of the well-pleaded facts in the complaint and resolve all reasonable inferences in the plaintiff's favor. *Id.*

¶16 Resolving whether the APA applies to the EPM involves statutory interpretation, which we review de novo. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460 ¶ 9 (2019). We give statutory terms their ordinary meaning in light of "their broader statutory context." *In re Drummond*, 257 Ariz. 15, 18 ¶ 5 (2024) (quoting *Columbus Life Ins. Co. v. Wilmington Tr., N.A.*, 255 Ariz. 382, 385 ¶ 11 (2023)). If the statutory text is clear, we apply its plain meaning, which is dispositive. *Id.* In construing a specific provision, we read it *in pari materia* with related statutory

provisions to harmonize and give effect to the entire statutory scheme. *Stambaugh v. Killian*, 242 Ariz. 508, 509 ¶ 7 (2017). Before analyzing how the APA and EPM work, we briefly outline their relevant provisions.

## A. The Administrative Procedure Act

**¶17** The Legislature enacted most of the current version of the APA in 1986, adopting portions of the 1981 Model State Administrative Procedure Act. 1986 Ariz. Sess. Laws ch. 232 (2d Reg. Sess.). Section 41-1001 provides operative definitions for the APA.

### 1. Definitions

**¶18** Section 41-1001(1) defines an "agency" as "any board, commission, department, officer or other administrative unit of this state, including the agency head . . . ." A "rule" is "an agency statement of general applicability that implements, interprets or prescribes law or policy, or describes the procedure or practice requirements of an agency." § 41-1001(21). And "rulemaking" is "the process to make a new rule or amend, repeal or renumber a rule." § 41-1001(22).

### 2. Applicability

**¶19** Under § 41-1002(A), the APA's rulemaking procedures apply to all agencies and proceedings unless "expressly exempted." Section 41-1002(B) further states that the APA controls over conflicting statutes "unless the other statute expressly provides otherwise."

### 3. Process

**¶20** Under § 41-1013(A), a rulemaking agency must file a notice of proposed rulemaking with the Secretary, and that notice must be published in the official register within thirty days of filing. The notice must identify the rule to be amended or adopted and include the text of the new rule. § 41-1022. The agency must then accept public comment on the rule for thirty days after publishing the notice and hold an oral proceeding upon request. § 41-1023. Once a rule is finalized, the agency must submit it for review within 120 days. § 41-1024. As relevant here, for agencies headed by an elected official, such as the Department of State, the APA provides for Attorney General review instead of review by the Governor's Regulatory Review Council. §§ 41-1057(A)(1), -1044. If an agency makes

a substantial change to a proposed rule, it must restart the notice-and-comment process. §§ 41-1025, -1022(E). To be valid, a rule must be adopted in substantial compliance with the APA, consistent with the statute, and "reasonably necessary to carry out the purpose of the statute . . . unless otherwise provided by law." § 41-1030(A).

## B. The EPM Statute

**¶21** The Legislature enacted the first EPM statute in 1972. 1972 Ariz. Sess. Laws ch. 218, § 30 (2d Reg. Sess.). The Legislature initially styled the EPM "as a guide for the conduct of elections by an approved electronic voting system." *Id.* It required the Secretary, "in concert with each county board of supervisors or other officer in charge of elections," to prescribe election rules at least thirty days before each election in an official EPM approved by the Attorney General and the Governor. *Id.* § 41. Over time, the EPM expanded in recognition of the different challenges presented by the electoral process.[2]

**¶22** The nature of the relationship between the Secretary and county officials, and what is produced by the EPM, has also changed. In 1993, the Legislature recharacterized the interaction between county officials and the Secretary as one of "consultation." 1993 Ariz. Sess. Laws ch. 98, § 31 (1st Reg. Sess.). And instead of prescribing "rules and regulations," the EPM was described as producing "rules." *Id.* In 2019, the Legislature added the October 1 submission deadline and the December 31 publication deadline. 2019 Ariz. Sess. Laws ch. 99, § 1 (1st Reg. Sess.). Residing in article 4, Voting Equipment, chapter 4, Conduct of Elections, title 16, Elections and Electors, § 16-452 prescribes the how, the why, and the means for developing and issuing the EPM.

---

[2] For example, the 1994 EPM is 124 pages in total. Ariz. Sec'y of State, State of Arizona Electronic Voting System Instructions and Procedures Manual (1994), Arizona Memory Project 1994, https://azmemory.azlibrary.gov/nodes/view/309156 (last accessed Jul. 15, 2026). The 2023 EPM is 268 pages. Ariz. Sec'y of State, 2023 Elections Procedures Manual (2023), http://apps.azsos.gov/election/files/epm/2023/EPM_20231231_Final_Edits_to_Cal_1_11_2024.pdf (last accessed Jul. 15, 2026).

**¶23**        Now, § 16-452(A) directs the Secretary to "consult[] with each county board of supervisors or other officer in charge of elections" to "prescribe rules to achieve and maintain the maximum degree of correctness, impartiality, uniformity and efficiency" regarding "early voting and voting, and of producing, distributing, collecting, counting, tabulating and storing ballots." The Secretary must also "adopt rules regarding fax transmittal of unvoted ballots, ballot requests, voted ballots and other election materials to and from absent uniformed and overseas citizens." § 16-452(A). Finally, the Secretary must "adopt rules regarding internet receipt of requests for federal postcard applications" as prescribed. *Id.*

**¶24**        Section 16-452(B) establishes deadlines for submitting the EPM to the Governor and the Attorney General for final approval and issuance. Finally, § 16-452(C) classifies a violation of the EPM adopted pursuant to § 16-452 as a class 2 misdemeanor. We turn next to the applicability of APA rulemaking procedures to the EPM and the parties' arguments.

## C.        EPM and Exemption from the APA

**¶25**        Under § 41-1002(A), all agencies are subject to the APA unless expressly exempted. *See Ariz. State Univ. ex rel. Ariz. Bd. of Regents v. Ariz. State Ret. Sys.*, 237 Ariz. 246, 252 ¶ 27 (App. 2015) (stating that § 41-1002 requires agencies to comply with the APA "in the absence of an express exemption").

**¶26**        The Secretary acknowledges that, by the APA's definitions, the EPM is a set of rules and that he and his department meet the definition of an agency subject to the APA.[3] Nonetheless, he argues that the EPM is exempt from APA rulemaking requirements. The Secretary bases this argument on three grounds. First, the Legislature created a unique EPM process by enacting § 16-452, which satisfies the "otherwise provided by law" provision of § 41-1030(A), even without an express exemption.

---

[3]    Certain sections of the Department of State are, though, explicitly exempted from the APA's requirements. For example, § 41-121.02(E) exempts the Arizona State Library, Archives, and Public Records Office from the APA. Whether and to what degree the APA otherwise applies to the Department of State and the Secretary is not before us.

Second, § 16-452's requirements conflict so sharply with the APA that it is impossible to comply with both, and that this incompatibility itself amounts to an express exemption under § 41-1002(A). And third, § 16-444(B) expressly exempts the EPM from the APA.[4]

**¶27**     The RNC argues that § 41-1002(A) only recognizes two forms of express exemption. First, § 41-1005, titled "Exemptions," lists certain agencies and proceedings to which "this chapter does not apply." Second, the RNC notes that the Legislature has sometimes placed exemption language in statutes outside the APA itself, by specifying that an agency's rules are exempt from "Title 41, Chapter 6." *See, e.g.*, § 16-974(D) (exempting the Clean Elections Commission and its rules from the APA); § 41-121.02(E) (exempting the Arizona State Library, Archives, and Public Records). We agree with the RNC that § 16-452 satisfies neither criterion for an express exemption.

### 1. Express exemption through conflicting provisions

**¶28**     To support the argument that the provisions of the EPM and APA are in such conflict that the EPM is expressly exempted, the Secretary asserts five conflicts between the APA and EPM. The RNC argues that the APA applies to every agency and rulemaking procedure "unless expressly exempted," and § 41-1002(B) confirms that an agency's other statutory duties, including rulemaking obligations, are "in addition to" the APA's requirements, unless the other statute "expressly provides otherwise." § 41-1002(A)-(B). The RNC further argues that there is no conflict between the two statutory schemes and that the EPM merely supplements rather than supplants the APA. We address each alleged conflict in turn, drawing reasonable factual inferences in favor of the RNC as the nonmoving party. *Brnovich*, 250 Ariz. at 130 ¶ 7.

**¶29**     The Secretary's first asserted conflict concerns timing. Under APA rulemaking, there is no date certain by which agencies must conclude rulemaking. In contrast, the EPM must be submitted to the Governor and the Attorney General by October 1 and "issued not later than December 31 of each odd-numbered year immediately preceding the general election." § 16-452(B). But these dates do not necessarily create

---

4   Our disposition renders consideration of an express exemption under § 16-444(B) moot.

an irreconcilable conflict with the APA. The Legislature may very well require a rule to be published by a particular date. The subject agency would then have to satisfy the APA's procedures before the publication date. *See* § 41-1002(B). The Secretary argues, though, that having to start the EPM process earlier would require drafting to begin in even-numbered election years instead of the odd-numbered years as required by § 16-452(B). However, the statute does not state *when* EPM development must begin. It only specifies submission for approval and issuance in odd-numbered years. Because the December 31 deadline does not make APA compliance impossible, it does not create an irreconcilable conflict.

¶30 The Secretary's second asserted conflict is similarly unavailing. He argues that each iteration of the EPM during consultation with the county election officials would require a new notice-and-comment period. But any suggested changes resulting from consultations do not invoke the notice-and-comment requirement. That arises only after the Secretary issues a notice of proposed rulemaking. § 41-1022. Accordingly, the Secretary could wait to issue a notice of proposed rulemaking, thereby invoking the notice-and-comment requirement, until after his consultations were complete.

¶31 The Secretary's third asserted conflict is that because the EPM is published as a standalone manual and the APA requires that compliant rules be published in the Arizona Administrative Code ("AAC"), the two procedures conflict. Section 16-452 prescribes when the EPM must be issued, but it does not specify the manner. That the manual has not been published in the AAC does not mean it cannot be published there. Publication requirements, therefore, do not create an irreconcilable conflict with the APA.

¶32 Fourth, the requirement that both the Governor and the Attorney General approve the EPM does not conflict with the APA. For agencies headed by an elected official, the APA itself contemplates Attorney General review in lieu of review by the Governor's Regulatory Review Council. *See* §§ 41-1057(A)(1), -1044. Section 16-452 simply adds gubernatorial approval to an existing requirement. Under § 41-1002(B), such additional procedural steps operate in addition to the APA's baseline requirements; they do not displace them.

**¶33** Finally, in the event judicial review of EPM provisions required any "last-minute" changes, they could be addressed through emergency rulemaking. *See* § 41-1026(A) (permitting an agency to make, amend, or repeal a rule upon "a finding that a rule is necessary as an emergency measure . . . without the notice prescribed by §§ 41-1021 and 41-1022 and prior review by the council, if the rule is first approved by the attorney general and filed with the secretary of state."). Nevertheless, it deserves acknowledgment that last-minute changes to election rules are strongly disfavored. *See Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 425 (2020) (noting the "*Purcell* principle" in emphasizing the problems caused by courts altering election rules just before an election).

**¶34** We also acknowledge that our conclusion that the EPM could operate within the parameters of the APA is based on reasonable inferences from a simple statutory comparison. Real-world practicalities might very well render the two schemes irreconcilable. But given that no one has ever attempted to issue an EPM under the APA, we lack evidence that it cannot be done. Moreover, if § 41-1002(A) allowed courts to infer an "express" exemption whenever the Legislature prescribed an allegedly conflicting procedure, much of the exemption language in § 41-1005 and agency-specific statutes would be superfluous. *See Sanchez v. Maricopa County*, 260 Ariz. 136, 142 ¶ 13 (2025) (noting that "[a] cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous" (alteration in original) (quoting *Nicaise v. Sundaram*, 245 Ariz. 566, 568 ¶ 11 (2019))).

**¶35** We, therefore, reject the Secretary's contention that the EPM is "expressly" exempt from the APA under § 41-1002(A) because of asserted conflicts between the EPM and the APA statutory schemes. Accordingly, § 41-1002(B)'s statement that a conflicting statute "is superseded by this chapter, unless the other statute expressly provides otherwise" is inapplicable. However, the differences identified by the Secretary illustrate the distinct operation of each statutory framework for promulgating rules versus issuing the EPM. This leads us to consider whether § 16-452 supplies a rulemaking process "otherwise provided by law" within the meaning of § 41-1030(A).

## 2. "Otherwise provided by law"

**¶36**      The Secretary suggests that before the 1992 amendment, which added "unless otherwise provided by law" to § 41-1030(A), the statutory language meant that rules that did not comply with APA rulemaking were presumptively invalid.   He contends that the 1992 amendment created an exception for statutes that had their own procedural rulemaking schemes.   Thus, in his view, the most plausible reading of § 41-1030(A) is that a rule adopted under an alternative statutory procedure is not invalid merely because it did not comply with APA procedures.

**¶37**      The RNC argues that § 41-1030(A) is purely remedial and serves to invalidate a rule that does not comply with APA rulemaking requirements.   According to the RNC, adopting the Secretary's interpretation would create a silent, implied exemption that voids § 41-1002 and contradicts case law that statutory silence does not exempt an agency, citing *Ariz. State Univ.*, 237 Ariz. at 252 ¶¶ 23-24, and *Carondelet Health Servs., Inc.*, 182 Ariz. 221, 228.   With respect to the 1992 amendment, the RNC argues that the "unless otherwise provided by law" clause reflects the Legislature's decision to require all rules, including those expressly exempted from APA rulemaking, to be published in the AAC.   1992 Ariz. Sess. Laws ch. 239, §§ 1–2 (2d Reg. Sess.) (mandating publication of exempt rules).   Thus, the clause simply acknowledges that some of the rules now published in the AAC did not comply with APA rulemaking, because they were expressly exempt from it.

**¶38**      When interpreting statutes, we begin with the text.   *Garibay v. Johnson*, 259 Ariz. 248, 255 ¶ 23 (2025).   And the text of a statute is not only evidence of legislative intent—it is the "law that judges apply."   *State v. Marner*, 261 Ariz. 275, 280 ¶ 19 (2026), *as amended on reconsideration* (Feb. 26, 2026).   The APA does not define the phrase "otherwise provided by law."   When a term lacks a statutory definition, we may consult dictionary definitions to determine its common meaning and usage. *Garibay*, 259 Ariz. at 255 ¶ 24 (citing *Matthews v. Indus. Comm'n*, 254 Ariz. 157, 163 ¶ 33 (2022)); *see also In re Drummond*, 257 Ariz. 15, 18 ¶ 7.   Because the Legislature adopted the phrase in 1992, we interpret it as it would have been understood at that time.   *Matthews*, 254 Ariz. at 165 ¶ 40; *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 78–83 (2012) (discussing the Fixed-Meaning Canon, which

requires that words should have the same meaning they had when the text was adopted).

**¶39**     No party disputes that "provided by law" refers to a statutory provision enacted by the Legislature.   *See Ariz. St. Bd. of Regents ex rel. Ariz. State Univ. v. Ariz. St. Pers. Bd.*, 195 Ariz. 173, 175 ¶ 12 (1999) (interpreting another provision of the APA using the phrase "unless otherwise provided by law").   We, therefore, focus on the ordinary meaning of the word "otherwise" in 1992, when the language was added.

**¶40**     The American Heritage Dictionary defines otherwise as "[i]n another way; differently."   *Otherwise*, The American Heritage Dictionary of the English Language (3d ed. 1992) (available at https://archive.org/details/the-american-heritage-dictionary-of-the-english-language-third-edition-1st-august-1992/page/n5149/mode/2up). The 6th edition of Black's Law Dictionary defines otherwise as "in a different manner; in another way, or in other ways."   *Otherwise*, Black's Law Dictionary (6th ed. 1990).   These definitions accord and demonstrate that "otherwise" means "differently" or "in another manner."

**¶41**     Additionally, we previously construed the phrase "otherwise provided by law" in other statutes.   In *May v. Ellis*, this Court interpreted a provision of the probate code, § 14-6102(A), which contains the phrase "[e]xcept as otherwise provided by law."   208 Ariz. 229, 231 ¶ 11 (2004). We addressed whether that language permitted a decedent's creditor to reach life insurance proceeds payable to a designated beneficiary and concluded that § 14-6102(A) applies only when no contrary law governs. *Id.*   Because another statute squarely governed the distribution of life-insurance proceeds, § 14-6102(A) yielded to it.   *Id.* at 232 ¶ 12.

**¶42**     Although *May* involved a direct conflict between two statutes, it turned not on the existence of a conflict but on whether another provision addressed the subject.   Because a separate statute governed the distribution of life insurance proceeds, the other statute controlled.   That approach comports with the ordinary meaning of "otherwise" and our jurisprudence: when the Legislature prescribes one method for performing a function and elsewhere provides a different, specific method for accomplishing the same task, the latter constitutes a manner "otherwise provided by law."   Accordingly, we now consider the procedural differences between the EPM and the APA.

### 3. Procedural Differences

**¶43** Section 16-452 requires the Secretary to draft the EPM to meet fixed statutory deadlines for the regular and recurrent biennial review of rules governing the conduct of elections. APA rulemaking is designed to create rules for the ongoing administration of programs and procedures for the public and regulated professions. Requiring full notice-and-comment rulemaking for each iteration of the EPM would overlay a generally applicable framework onto a process the Legislature specifically tailored to meet the recurring and time-sensitive demands of election administration. Mandating EPM compliance with APA rulemaking requirements risks undermining the purpose and effect of the Legislature's time-sensitive regulation of elections.

**¶44** The consultation requirements in § 16-452 further illustrate the distinct nature of the EPM process. The statute directs the Secretary to draft the EPM in consultation with county election officials. *See* § 16-452(A). Although the Secretary has invited public comment on draft EPMs in recent years, that practice is not statutorily required.[5] The Legislature, thus, prescribed consultation with a defined group of officials, reflecting a process tailored to election administration rather than the broadly participatory framework the APA imposes.

**¶45** Judicial review of the EPM is likewise distinct from the process to challenge APA rulemaking, which this case illustrates. Plaintiffs would have faced additional procedural hurdles if the APA applied. The APA channels disputes through the petition procedure in § 41-1033, which, although not a jurisdictional exhaustion requirement under subsection (M), can delay judicial review and narrow the issues through the agency's response. *Cf. Samaritan Health Sys. v. Ariz. Health Care Cost Containment Sys. Admin.*, 198 Ariz. 533, 537 ¶ 19 (App. 2000) (explaining the limited applicability of immediate judicial review under § 41-1034). Further, defects in notice, publication, or other procedures may

---

[5] This does not foreclose participation by members of the public. They remain free to communicate with county election officials regarding the EPM, and those officials may relay such input to the Secretary during the consultation that § 16-452(A) requires. But the statutory scheme contains no affirmative requirement for a formal notice-and-comment period.

be excused if the agency substantially complied with the APA, reducing the likelihood that procedural challenges result in invalidation rather than other possible relief. *See* § 41-1030(A). Together, these procedural limitations illustrate that imposing APA rulemaking requirements in their entirety on the EPM would introduce challenges that litigants would not otherwise confront under its governing statute.

¶46 The history of legislative enactments and amendments also reflects the distinct treatment of the APA and the EPM. Since the 1992 revisions to the APA, the Legislature has amended § 16-452 and related EPM provisions five times without reference to the APA.[6] The Legislature has likewise amended § 41-1030(A) itself seven times since 1992, variously imposing new procedural requirements or expanding avenues for challenging agency rules. But the Legislature has never altered the "unless otherwise provided by law" clause.[7] And although several APA amendments were enacted during the same legislative session in which EPM statutes were amended, the Legislature never so much as hinted that § 16-452's process and the APA were in any way interrelated. The Legislature has treated the APA and EPM, throughout their respective

---

[6] *See, e.g.*, 1993 Ariz. Sess. Laws ch. 98, § 31 (1st Reg. Sess.) (altering the role of the county election officers from collaborators to consultants); 2003 Ariz. Sess. Laws ch. 38, § 1 (1st Reg. Sess.) (adding responsibilities for transmitting ballots to overseas and military voters); 2010 Ariz. Sess. Laws ch. 173, § 4 (2d Reg. Sess.) (establishing procedures for joining the early voter list); 2014 Ariz. Sess. Laws ch. 45, § 8 (2d Reg. Sess.) (requiring initiative circulators to register under EPM requirements); 2019 Ariz. Sess. Laws ch. 99, § 1 (1st Reg. Sess.) (adding the October and December deadlines now codified in § 16-452).

[7] *See, e.g.*, 1994 Ariz. Sess. Laws ch. 363, § 20 (2d Reg. Sess.) (requiring compliance with Articles 4, 4.1 and 5); 1995 Ariz. Sess. Laws ch. 251, § 5 (1st Reg. Sess.) (adding § 41-1030(B)); 1998 Ariz. Sess. Laws ch. 57, § 36 (2d Reg. Sess.) (modifying the substantial compliance standard in part and limiting agency rulemaking authority); 2002 Ariz. Sess. Laws ch. 334, § 6 (2d Reg. Sess.) (removing the requirement to substantially comply with § 41-1036); 2015 Ariz. Sess. Laws ch. 104, § 3 (1st Reg. Sess.) (authorizing a private cause of action to enforce § 41-1030(A)); 2021 Ariz. Sess. Laws ch. 161, § 5 (1st Reg. Sess.) (adding § 41-1030(C)); 2022 Ariz. Sess. Laws ch. 265, § 5 (2d Reg. Sess.) (adopting the current language of § 41-1030(A)).

statutory existence, as separate schemes sailing on their own charted course to their own respective destinations.

**¶47**        Therefore, we conclude that § 16-452 establishes a comprehensive, distinct, and self-contained process for developing the EPM as a rulemaking process "otherwise provided by law" within the meaning of § 41-1030(A).   The EPM is, therefore, not invalid for failing to comply with the APA's procedures.

### 4. Other Arguments

**¶48**        The RNC contends that reading § 41-1030(A) this way renders § 41-1002(A) superfluous.   We disagree.   Section 41-1002(A) and § 41-1030(A) operate at different stages and serve distinct functions. Section 41-1002(A) establishes when the APA applies and requires that any exemption from its procedures be expressly stated—either in § 41-1005 or in agency-specific statutes.   Section 41-1030(A), by contrast, addresses whether a rule's validity can be sustained notwithstanding APA noncompliance.   Section 41-1002(A) determines the default framework, whereas § 41-1030(A) provides that the Legislature may establish alternative comprehensive procedures that can result in valid rules that would otherwise be invalid.   This reading gives effect to the Legislature's 1992 amendment of § 41-1030 while harmonizing both provisions.

**¶49**        The RNC further argues that the absence of an express exemption in § 16-452, like that found in § 16-974(D) for the Clean Elections Commission, means the EPM must follow APA rulemaking.   Notably, the initiative that created the Commission did not establish separate rulemaking procedures for it.   *See* Citizens Clean Elections Act, Proposition 200 (1998).   Instead, the people expressly exempted rules enacted by the Commission from the APA.   § 16-974(D).[8]   Here, the

---

8   That text reads:

> The commission's rules and any commission enforcement actions pursuant to this chapter are not subject to the approval of or any prohibition or limit imposed by any other executive or legislative governmental body or official. Notwithstanding any law to the contrary, rules adopted pursuant to this chapter are exempt from title 41, chapters 6 and 6.1.

Legislature provided a comprehensive procedure for the EPM in the first instance. The cases cited by the RNC for a similar argument concerning silence in a statute are equally unavailing.

¶50 The RNC further asserts that our caselaw forecloses the Secretary's reading of § 41-1030(A), pointing to *Arizona State University* and *Carondelet Health Services, Inc.* Each case, the RNC asserts, holds that an implementing statute's silence does not exempt an agency from the APA's rulemaking requirements. *See Ariz. State Univ.*, 237 Ariz. at 252 ¶¶ 23–24; *Carondelet*, 182 Ariz. at 228. We agree that both cases stand for that proposition. Neither, however, controls the question before us, because neither involves the circumstance of when a statute is not merely silent, but affirmatively prescribes a distinct and comprehensive process for the agency to follow.

¶51 In *Arizona State University*, the Arizona State Retirement System ("ASRS") charged a participating employer for an actuarial unfunded liability under A.R.S. § 38-749, a statute that, as the court observed, "does not explain how to determine when a termination incentive program results in an actuarial unfunded liability or how to calculate 'the amount of the unfunded liability.'" 237 Ariz. at 249 ¶ 6. Confronted with that gap, the ASRS adopted an internal policy that selected one of two available calculation methods—choosing the method it did because it was "less onerous for employers." *Id.* at 251 ¶ 21. The court held that the policy was a rule, and although § 38-749 "says nothing about rulemaking, the statute's silence does not exempt the System from the APA's rulemaking procedure." *Id.* at 252 ¶ 23. Section 38-749 supplied no procedure of its own, so the agency's chosen methodology had to be promulgated as a rule; otherwise, it would have no effect. *Id.* ¶ 24. The operative fact was the statute's silence as to any exemption or procedure.

¶52 *Carondelet* is similar in that a 1989 session law directed the agency to "recalculate, if necessary, the adjusted billed charge factor," 182 Ariz. at 224, but, as the court of appeals found, "it d[id] not set forth the calculations to be made and le[ft] much to AHCCCS' discretion," *id.* at 228. The agency responded with an unpublished internal methodology that it never promulgated as a rule and that, in the court's words, was "[a]t no time . . . publicly articulated so that hospitals and other interested parties could readily examine them." *Id.* at 228–29. Holding that "[a]ll agencies are subject to the APA unless they are expressly exempted," the court

rejected the agency's submission that "from its silence" one could infer "the [L]egislature never envisioned the need for an explanatory rule." *Id.* at 228. Again, the statute prescribed no process, and the agency filled the vacuum on its own without an APA exemption.

**¶53** The present case is, thus, readily distinguishable. The EPM is not the product of a statute that says nothing and leaves the Secretary to improvise an unpublished methodology. The Legislature has prescribed in § 16-452 a detailed and distinct process governing the EPM's adoption—consultation with the election officers of every county, submission of a draft to the Governor and Attorney General by a fixed statutory date, approval by both officials, and issuance of the completed manual by December 31 of each odd-numbered year. The Secretary's argument is, therefore, not that legislative silence created an implied exemption—the contention rejected in both *Arizona State University* and *Carondelet*—but that the Legislature has "otherwise provided by law" an alternative process within the meaning of § 41-1030(A). Neither decision addressed that clause. In each, the court resolved the question under the express-exemption mandate of § 41-1002(A), *see Ariz. State Univ.*, 237 Ariz. at 252 ¶ 24; *Carondelet*, 182 Ariz. at 228, and invoked § 41-1030(A) only to identify the consequence of defective rulemaking—invalidity.

**¶54** The distinction is sharpest in *Carondelet*. The court there bolstered its conclusion by observing that the Legislature had "specifically exempted [the agency] from the requirements of the APA in other areas," reasoning that it "would have so stated" had it intended an exemption for the session law. 182 Ariz. at 228. That inference governs claims of exemption. The Secretary does not contend that § 16-452 exempts the EPM from the APA. He contends that § 16-452 is the alternative rulemaking process that § 41-1030(A) itself contemplates. *Carondelet*'s reasoning about how the Legislature signals an exemption thus does not reach the distinct authorization on which the Secretary relies.

**¶55** *Arizona State University* and *Carondelet* are inapposite to the facts of this case, and we decline the RNC's invitation to extend them beyond the facts in which they arose.

**DISPOSITION**

**¶56**            For the foregoing reasons, we vacate the court of appeals opinion and reinstate pages 1–3 of the trial court's May 10, 2024 decision. We further remand to the court of appeals to address RNC's alternative claims challenging eight specific provisions of the EPM that the RNC contends violate state and federal law[9].

---

[9] On remand, the court of appeals concluded that, based on the record, the RNC lacked standing to seek a declaratory judgment regarding the challenged provisions and affirmed the superior court's dismissal of RNC's complaint. *Republican Nat'l Comm. v. Fontes*, No. 2 CA-CV 2024-0241, 2025 WL 3511098, at *6 ¶¶ 19–20 (Ariz. Ct. App. Dec. 5, 2025).